IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| DARRIN J., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 5:23-cv-00256-C-BT |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Darrin J.[1] seeks judicial review of the Commissioner's final decision denying his application for disability insurance benefits under Title II of the Social Security Act. *See* Complaint (ECF No. 1). For the reasons explained below, the District Court should AFFIRM the Commissioner's decision.

## Background

Plaintiff alleges that he is disabled due to a variety of impairments, including post-traumatic stress disorder (PTSD), anger issues, short term memory loss, overreacting to situations, a hard time concentrating and focusing, anxiety, and alcoholism. Admin. R. 15 (ECF No. 15-1).[2] Plaintiff was born in 1969, and he alleges

---

[1] The Court uses only Plaintiff's first name and last initial as instructed by the May 1, 2018, Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.
[2] Citations to the record refer to the CM/ECF page number at the top of each page rather than page numbers at the bottom of each filing.

that he has been disabled since September 1, 2017. Admin. R. 2, 4 (ECF No. 14-3). He has a high school education, one year of college attendance, and past relevant work experience as a document specialist. Admin. R. 61-63 (ECF No. 13-3); Admin. R. 5, 16, 38-39 (ECF No. 15-1). Plaintiff also is a Navy combat veteran who served between 2000 and 2004. Admin. R. 549 (ECF No. 15-2).

Plaintiff applied for disability insurance benefits in February 2021. Admin. R. 2 (ECF No. 14-3). His claim was denied initially (Admin. R. 2-24, ECF No. 14-1) and on reconsideration (Admin. R. 2-13, ECF No. 14-2). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge (ALJ), who conducted a telephonic administrative hearing on June 1, 2022.[3] Admin. R. 14, 39-74 (ECF No. 13-3).

The ALJ found Plaintiff was not disabled from September 21, 2017, his alleged onset date, through September 30, 2021, his date last insured, and thus not entitled to disability benefits. Admin. R. 15, 28 (ECF No. 13-3). Utilizing the five-step sequential evaluation,[4] the ALJ first found that Plaintiff had not engaged in

---

[3] Because of the extraordinary circumstances presented by the COVID-19 pandemic, the ALJ was unable to conduct the hearing by video. Admin. R. 14 (ECF No. 13-3).

[4] "In evaluating a disability claim, the [ALJ] conducts a five-step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The plaintiff bears the initial burden of establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ to show that there is

substantial gainful activity since his alleged onset date. Admin. R. 17 (ECF No. 13-3). At the second step, the ALJ noted that Plaintiff suffers from PTSD, dysthymic disorder, depressive disorder, and alcohol dependence disorder, and that those impairments are "severe." Admin. R. 17 (ECF No. 13-3). At the third step, she determined that Plaintiff's severe impairments do not meet or medically equal any listed impairment in Appendix 1 of the Social Security Regulations. Admin. R. 18 (ECF No. 13-3).

Before proceeding to the fourth step, the ALJ found that Plaintiff retained the residual functional capacity (RFC)

> to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant must avoid concentrated exposure to work at unprotected heights and around hazardous moving machinery. The claimant can understand, remember, and carry out simple to the lower end of detailed tasks, but not complex work tasks. He can make work-related decisions; accept instructions; and adapt to changes in a routine work setting. The claimant is capable of occasional interaction with coworkers and no interaction with the public. The claimant can maintain the attention, concentration, and work pace to perform these tasks independently and appropriately within a regular work schedule and complete a normal workday and workweek with ordinary supervision.

Admin. R. 19-20 (ECF No. 13-3).

---

other substantial work in the national economy that the plaintiff can perform. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

At step four, with the assistance of vocational expert (VE) testimony, the ALJ determined that Plaintiff could perform his past relevant work, and the ALJ made an alternative step five finding that Plaintiff could perform other work that exists in significant numbers in the national economy, including work as an industrial cleaner, a cook helper, a linen checker, a patch worker, a route aide, and a warehouse checker. Admin. R. 26-28 (ECF No. 13-3). Therefore, the ALJ found that Plaintiff was not disabled and not entitled to benefits. Admin. R. 28 (ECF No. 13-3).

Plaintiff appealed the ALJ's decision to the Appeals Council and provided additional evidence. Admin. R. 2-3 (ECF No. 13-3). The Appeals Council found that the appeal did not provide a basis for modifying the ALJ's decision. Admin. R. 2-10 (ECF No. 13-3). Plaintiff then filed this action in federal district court seeking judicial review under 42 U.S.C. § 405(g).

## Legal Standard

The Court's "review of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the [ALJ] applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401

(1971); *see Copeland*, 771 F.3d at 923 ("Substantial evidence is more than a mere scintilla and less than a preponderance.").

The ALJ, and not the courts, resolves conflicts in the evidence; the Court may not "reweigh the evidence or try the issues de novo." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam). Hence, the Court may not substitute its own judgment for the ALJ's, and it may affirm only on the grounds that the Commissioner stated to support the decision. *Copeland*, 771 F.3d at 923. If the Commissioner's findings are supported by substantial evidence, the findings are conclusive, and the Commissioner's decision must be affirmed. *Martinez*, 64 F.3d at 173. A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

Nevertheless, the substantial evidence review is not an uncritical "rubber stamp" and requires "more than a search for evidence supporting the [ALJ's] findings." *Hill v. Saul*, 2020 WL 6370168, at *6 (N.D. Tex. Sept. 29, 2020) (quoting *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984)), *adopted by* 2020 WL 6363878 (N.D. Tex. Oct. 29, 2020) (Lindsay, J.). The Court "must scrutinize the record and take into account whatever fairly detracts from the substantiality of the evidence supporting" the ALJ's decision. *Id.* (quoting *Martin*, 748 F.2d at 1031). A no-substantial-evidence finding is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Id.* (citation omitted).

5

**Analysis**

In four general grounds for relief, Plaintiff argues: (1) the ALJ failed to "properly analyze [his RFC]"; (2) the ALJ erred in her evaluation of Nurse Practitioner (NP) Jean Rick Duroseau's medical opinion;[5] (3) the ALJ erred at step three in finding that Plaintiff did not have an impairment that met the criteria under Listing 12.15; and (4) the ALJ did not "give proper weight to [Plaintiff's] testimony regarding the intensity and persistence of his symptoms of PTSD and depression." Pl.'s Mem. in Support of Mot. for Summ. J. (Pl.'s Br.) 8, 14-20 (ECF No. 20). In response, the Commissioner argues that "[s]ubstantial evidence supports the ALJ's determination that Plaintiff was not disabled, and the ALJ followed the correct legal standards." Def.'s Combined Mem. in Support of Cross-Mot. for Summ. J. and Resp. to Pl.'s Mot. for Summ. J. (Def.'s Br.) 17 (ECF No. 24).

**A. The ALJ's RFC Determination**

Plaintiff argues that the ALJ failed to "properly analyze [his RFC]." Pl.'s Br. 8, 20. He asserts that the ALJ "did not consider severity of [his] anger and irritability issues as well as the severity of [his] PTSD[,] . . . [and] dismissed the severity of [his] PTSD because of the normal mental status examinations noted in the medical record." Pl.'s Br. 7. In response, the Commissioner asserts that "[b]ecause substantial evidence supports [the ALJ's] legally sufficient RFC

---

[5] According to the record, Jean Rick Duroseau has a Master of Science in Nursing (M.S.N.), and he is a Psychiatric-Mental Health Nurse Practitioner (P.M.H.N.P.-B.C.). Admin. R. 539 (ECF No. 15-2). Plaintiff erroneously refers to NP Duroseau as a doctor. *See* Pl.'s Br. 17-18, 20.

assessment, the Court should affirm the ALJ's decision." Def.'s Resp. 5 (citing *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) ("Substantial evidence" means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion")).

An ALJ's RFC analysis determines the most that a person can still do despite recognized limitations. 20 C.F.R. § 404.1545(a)(1). The RFC determination is a "combined medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hill*, 2020 WL 6370168, at *3 (cleaned up) (quoting *Hollis v. Bowen*, 837 F. 2d 1378, 1386-87 (5th Cir. 1988)). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 61 Fed. Reg. 34474, 34475 (July 2, 1996). An individual's RFC should be based on all the relevant evidence in the case record, including opinions submitted by medical sources. 20 C.F.R. § 404.1545(a)(3); SSR 96-8p, *supra*.

Here, the ALJ determined that Plaintiff had the RFC to make work-related decisions; accept instructions; adapt to changes in a routine work setting; maintain the attention, concentration, and work pace to perform tasks independently and appropriately within a regular work schedule; and complete a normal workday and workweek with ordinary supervision. Admin. R. 19-20 (ECF No. 13-3). However, the ALJ also added additional limitations to the RFC. Specifically, she found that in "the interests of safety, and given the claimant's history of alcohol dependence

and complaints of medication side-effects, which could cause distraction, the RFC finds the claimant must avoid concentrated exposure to hazardous moving machinery or unprotected heights." Admin. R. 19-20, 24 (ECF No. 13-3). And, she found that Plaintiff was limited to no interaction with the public and only occasional interaction with coworkers, due to his "reported difficulty interacting with others secondary to PTSD and depressive disorder." Admin. R. 19-20, 24 (ECF No. 13-3). The RFC also limited Plaintiff to understanding, remembering and carrying out "simple to the lower end of detailed tasks, but not complex work tasks," due to his "mental disorders and side effects from medication, the combination of which can generally cause work-related distraction." Admin. R. 19-20, 24 (ECF No. 13-3).

The ALJ considered treatment records from Dr. Boris Porto's November 2017 mental status examination showing that Plaintiff was smiling, his demeanor was "open/kind/warm," and he had no suicidal ideations. Admin. R. 22 (ECF No. 13-3); Admin. R. 95 (ECF No. 15-2). He also considered mental status examinations by Dr. Rafael Ruiz, a psychiatrist at the Veterans Administration (VA) Outpatient Clinic, indicating Plaintiff was calm, pleasant, and exhibited cooperative behavior with good eye contact; normal speech; linear, logical, and goal-directed thought processes; and thought content without active suicidal or homicidal ideations. Admin. R. 21-22 (ECF No. 13-3); Admin. R. 222 (ECF No. 15-2).

In addition, the ALJ considered treatment records from NP Duroseau, who first saw Plaintiff at the VA in April 2019, and similar to Dr. Ruiz, his mental status examinations showed Plaintiff to be calm, pleasant, and demonstrating cooperative behavior with good eye contact; normal speech; linear, logical, and goal-directed thought processes; and thought content without active suicidal or homicidal ideations. Admin R. 21-22 (ECF No. 13-3); Admin R. 170, 209, 222-225 (ECF No. 15-2).

The ALJ also took into account mental status examinations during therapy sessions at the VA with Keenan Greg Carley, a Licensed Clinical Social Worker/Counselor, beginning in May 2019, which showed cooperative behavior, normal thought processes, intact insight and judgement, no evidence of instability, and no suicidal/homicidal ideation. Admin. R. 18-19, 21-22 (ECF No. 13-3); Admin. R. 175, 185, 194, 200 (ECF No. 15-2). And, the ALJ noted that a December 2019 mental status examination showed pleasant and cooperative behavior, "okay" concentration and memory, good insight and judgement, normal thought processes, and no current suicidal or homicidal ideation/intent. Admin. R. 18, 22 (ECF No. 13-3); Admin. R. 147 (ECF No. 15-2).

These examination findings constitute substantial evidence supporting the ALJ's RFC. *See* Admin. R. 19-20 (ECF No. 13-3); *see generally Britton v. Saul*, 827 F. App'x 426, 429-30 (5th Cir. 2020) (examination findings are relevant and substantial evidence supporting an RFC assessment).

In addition to the examination findings, the ALJ also considered the findings of Addison E. Gradel, Ed.D., the consultative psychological examiner, who in April 2021, described Plaintiff as pleasant, cooperative, and composed. Admin. R. 18 (ECF No. 13-3); Admin. R. 529, 531 (ECF No. 15-2). Dr. Gradel's mental status examination of Plaintiff showed normal speech; goal-directed thought processes; and coherent and logical thought content. Admin. R. 23 (ECF No. 13-3); Admin. R. 531-32 (ECF No. 15-2). Regarding concentration, Dr. Gradel reported, "Serial 3 addition is correct for 7 or 8 calculations," and regarding insight/judgment, Dr. Gradel noted Plaintiff could identify how much change results when "6 dollars of gasoline is purchased and paid for with a 10 dollar bill." Admin. R. 19, 23 (ECF No. 13-3); Admin. R. 532 (ECF No. 15-2). Dr. Gradel opined that Plaintiff's "mental emotional disorder has improved with current prescribed medication[] and may improve further with ongoing sobriety and with the addition of trauma recovery supportive counseling[.]" Admin. R. 533 (ECF No. 15-2). Such evidence is consistent with the ALJ's RFC assessment.

In addition, the ALJ considered the opinion of state agency psychologist, Jessy Sadovnik, Psy.D., who reviewed the medical evidence in October 2021. Admin. R. 24-25 (ECF No. 13-3); Admin. R. 17-19 (ECF No. 14-1). Dr. Sadovnik agreed with Jean Germain, Ph.D., the state agency psychologist who reviewed the record at the initial level of the administrative review in April 2021, who found that Plaintiff had the mental RFC to make decisions, accept instructions, concentrate for extended periods, respond appropriately to changes in a routine work setting,

and understand, remember, and carry out detailed but not complex instructions. Admin. R. 24-25 (ECF No. 13-3); Admin. R. 12-13, 16, 21, 23 (ECF No. 14-1).

To support his argument that he had functional limitations beyond those in the RFC, Plaintiff relies on evidence that predates his alleged disability onset date of September 1, 2017—including a 2009 diagnosis of PTSD and major depression, severe (*see* Admin. R. 573-74, ECF No. 15-2), along with his June 2009 statement supporting his claim for VA benefits (*see* Admin. R. 575-79, ECF No. 15-2). Pl.'s Br. 8, 13-14, 18, 20. He also faults the ALJ for not fully considering letters from the Elder Evan Jackson Jr. (his minister) (*see* Admin. R. 80-81, ECF No. 15-1) and Robert Johnson (a school friend who witnessed how Plaintiff changed after returning from war) (*see* Admin. R. 75-79, ECF No. 15-1), concerning his anger and irritability related to his PTSD. Pl.'s Br. 10. The Court agrees with the Commissioner, however, that "such evidence does not demonstrate that Plaintiff actually had functional limitations beyond those in the RFC during the relevant period beginning September 1, 2017." Def.'s Br. 9. Indeed, "[t]he mere presence of some impairment is not disabling per se." *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).

For these reasons, the Court concludes that substantial evidence supports the ALJ's RFC determination and remand is not warranted on this basis.

### B. The ALJ's Evaluation of NP Duroseau's Opinion

Plaintiff contends that the ALJ erred in her evaluation of the medical opinion of NP Duroseau. Pl.'s Br. 8, 14-18. In response, the Commissioner argues

that "substantial evidence and relevant legal standards support the ALJ's finding regarding NP Duroseau's opinion." Def.'s Resp. 13.

Under the current regulations, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a); *Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021) ("ALJs are no longer required to give controlling weight to a treating physician's opinion, as was mandated by federal regulations and our caselaw in the past."). However, the ALJ must consider all "medical opinions" for their "persuasiveness" using the factors outlined in the rule. 20 C.F.R. § 404.1520c(a). These factors include supportability, consistency, relationship with the claimant, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, examining relationship, specialization, and other factors such as whether the medical source has familiarity with the other evidence in the claim. *Id.* § 404.1520c(c). The most important factors are supportability and consistency. *Id.* "While supportability measures the degree of relatedness between a medical provider's opinion and the medical evidence she provides to support that opinion, consistency is an all-encompassing inquiry, which focuses on how well a medical source is supported, or not supported, by the entire record." *Linda M. v. Comm'r, Soc. Sec. Admin.*, 2022 WL 4125095, at *3 (N.D. Tex. Sept. 8, 2022) (Toliver, J.) (internal quotation marks and citation omitted); *see also Sharon H. v. Kijakazi*, 2022 WL 3951488, at *3 (N.D. Tex. Aug. 31, 2022) (Hendrix, J.) ("[S]upportability looks internally to the bases

presented by the medical opinion itself" while "consistency is an external inquiry that juxtaposes a medical opinion to other evidence in the record, including opinions of other medical professionals.").

The ALJ also must "articulate in [her] decision how persuasive [she] finds all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." 20 C.F.R. § 404.1520c(b). Further, the ALJ must "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings." *Id.* § 404.1520c(b)(2). She may, but need not, explain how she considered the remaining factors. *Id.* An ALJ commits legal error when she fails to address or even mention a medical opinion in the record without explanation. *Kneeland v. Berryhill*, 850 F.3d 749, 759 (5th Cir. 2017); *see also Webster*, 19 F.4th at 718 ("An ALJ usually cannot reject a medical opinion without some explanation."); *Amanda J. v. Saul*, 2020 WL 4697880, at *3 (N.D. Tex. Aug. 13, 2020) (Boyle, J.) ("[A]n ALJ commits error when he fails to address or mention a medical opinion—irrespective of whether the ALJ could have rejected it.").

Here, the ALJ stated in her written decision that she "considered the medical opinion(s) . . . in accordance with the requirements of 20 C.F.R. 404.1520c." Admin. R. 20 (ECF No. 13-3). In particular, the ALJ considered a February 3, 2022 letter written by NP Duroseau on behalf of Plaintiff as well as NP Duroseau's opinions dated January 7, 2022, and May 24, 2022. *See* Admin. R. 25 (citing Exh.

B6F/1, B5F, and B7F). The ALJ found the letter and opinions "unpersuasive." Admin. R. 25.

For the reasons that follow, the Court finds that the ALJ's analysis of NP Duroseau's letter and opinions complies with the controlling regulatory requirements. *See* 20 C.F.R. § 404.1520c.

In his February 3, 2022 letter, NP Duroseau states that Plaintiff has been under his care since April 2009, has past psychiatric history of PTSD, depression, and alcohol abuse, has symptoms including hypervigilance, anxiety, irritability, depressed mood, and lack of motivation, and that Plaintiff's "symptoms have made it difficult for hi[m] to work on a sustained basis." *See* Admin. R. 538 (ECF No. 15-2). The ALJ found the letter unpersuasive because "no particular specific functional opinions are provided and the conclusion about inability to work is reserved to commissioner." Admin. R. 25 (ECF No. 13-3). As the Commissioner correctly notes, statements indicating that a claimant is unable to perform regular and continuing work are "statements on issues reserved to the Commissioner," which are inherently neither valuable nor persuasive, and the ALJ is not required to provide any analysis of how she considered such evidence. *See* Def.'s Br. 12-13 (citing 20 C.F.R. § 404.1520b(c) and (c)(3)). NP Duroseau's statement in the letter regarding Plaintiff's ability "to work on a sustained basis" relates to Plaintiff's ability to perform regular and continuing work. Admin R. 25 (ECF No. 13-3) (citing Exh. B6F/1). Thus, the ALJ properly did not give deference to such a statement.

With respect to supportability, the ALJ found that NP Duroseau's opinions—noting marked to extreme mental limitations related to Plaintiff's anger and irritability—were not supported by objective exams, including treatment records reflecting that Plaintiff "presented as polite and engaged, he presented with euthymic mood and he presented with appropriate impulse control." Admin. R. 25 (ECF No. 13-3) (citing Exh. B15F/7, 9, 13, 16, 23).

With respect to consistency, the ALJ emphasized that NP Duroseau's 2022 opinion was inconsistent with other evidence in the record:

> As well, the opinions are inconsistent with later treatment records that note the claimant also presented as polite and engaged, he presented with euthymic mood, and he presented with appropriate impulse control (B15F/1). The claimant presented with good insight and judgment. Moreover, the opinion is inconsistent with the claimant's testimony and functional reports regarding his ability to perform personal care, manage money, and run his own errands.

Admin. R. 25-26 (ECF No. 13-3).

Having reviewed the ALJ's written decision and the record, the Court concludes that the ALJ's "persuasiveness" analysis of NP Duroseau's letter and opinions adequately considered the factors outlined in 20 C.F.R. § 404.1520c(a) and that substantial evidence supports the ALJ's finding that NP Duroseau's opinion was unpersuasive. Therefore, remand is not warranted on this basis.

### C. Listing 12.15

Plaintiff asserts that the ALJ erred at step three of the sequential evaluation process. Pl.'s Br. 19-20. He contends the record shows that the severity of his PTSD meets or equals the criteria of listing 12.15 (trauma- and stressor-related disorders)

of Appendix 1 of the relevant regulations (individually, "listing" or "listed impairment"). Pl.'s Br. 19-20 (citing 20 C.F.R. § 404, Subpart P, Appendix 1, listing 12.15). In response, the Commissioner contends that substantial evidence supports the ALJ's conclusion that Plaintiff did not have a Listings-level impairment. Def.'s Br. 16. The Court agrees.

As required at step three, the ALJ considered whether Plaintiff's impairments met or equaled the relevant listings. Admin. R. 18-19 (ECF No. 13-3). The listings describe impairments that are "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a). "The claimant has the burden of proving that [his] impairment or combination of impairments meets or equals a listing." *Johnson v. Comm'r, SSA*, 2022 WL 2919500, at *4 (N.D. Tex. June 27, 2022) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990), 2016 WL 5745077 at *7 (D. Cal. Sept. 30, 2016)), *adopted by* 2022 WL 2918111 (N.D. Tex. July 25, 2022) (O'Connor, J.). A claimant's burden at step three is a high one because the Commissioner "explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Zebley*, 493 U.S. at 532. "For a claimant to show that his impairment matches [or meets] a listing, it must meet *all* of the specified medical criteria." *Id.* at 530 (emphasis in original). The court will find that substantial

evidence supports the ALJ's finding at step three if the plaintiff fails to demonstrate the specified medical criteria. *Selders v. Sullivan*, 914 F.2d 614, 619-20 (5th Cir. 1990). Remand is not required unless the claimant establishes that the ALJ erred in her Listings analysis, and this error affected the claimant's substantial rights. *Audler v. Astrue*, 501 F.3d 446, 448-49 (5th Cir. 2007); *see also Shinseki v. Sanders*, 556 U.S. 396, 414 (2009) (the claimant bears the burden of showing that any error was harmful).

Listing 12.15 addresses trauma- and stressor-related disorders. Listing 12.15 requires a plaintiff to meet the requirements of subparts A and B, or A and C, of that Listing by showing:

A.  Medical documentation of all of the following:

1.  Exposure to actual or threatened death, serious injury, or violence;

2.  Subsequent involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks);

3.  Avoidance of external reminders of the event;

4.  Disturbance in mood and behavior; and

5.  Increases in arousal and reactivity (for example, exaggerated startle response, sleep disturbance).

AND

B.  Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

1.  Understand, remember, or apply information (see 12.00E1).

2.  Interact with others (see 12.00E2).

17

   3.  Concentrate, persist, or maintain pace (see 12.00E3).

   4.  Adapt or manage oneself (see 12.00E4).

OR

   C.  Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

   1.  Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and

   2.  Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. § 404, Subpart P, Appendix 1, Part 1, § 12.15.

The ALJ did not specifically discuss the paragraph A criteria in her step three analysis. But any error in failing to discuss the paragraph A criteria would be harmless because substantial evidence supported the ALJ's determination that Plaintiff did not meet the paragraph B or the paragraph C criteria. And, neither Plaintiff nor the Commissioner complains about the ALJ's lack of discussion concerning the Paragraph A criteria.

The ALJ concluded Plaintiff's PTSD did not meet the paragraph B criteria:

In understanding, remembering, or applying information, the claimant had a mild limitation. The claimant testified that he lives alone, and he can manage his own finances. Furthermore, treatment records reveal the claimant's cognition was intact (See B3F/13, 43). In April 2021, psychological consultative examination, Addison Gradel, Ph.D. noted the claimant's recent memory was 3/3 but 1/3 after 5 minutes, 5 forward and 4 in reverse (B4F/4). Moreover, a SLUMS test revealed a score of 24 which was in the range of no more than a mild neurocognitive disorder (B16F/22). The undersigned acknowledges

that this assessment specifies on its face that it is based on a self-reported assessment and not a sufficient basis for diagnostic purposes.

In interacting with others, the claimant had a moderate limitation. The claimant testified that he has difficulty interacting with others due to his PTSD and hypervigilance. He stated that he can go from 0 to a 100 quick, and had relationship problems with his significant other culminating in a domestic assault charge. Even so, treatment records repeatedly document calm, pleasant and cooperative behavior (B3F/13, 43, 204, B4F). As well, the record notes the claimant joined a gym and later reconsidered joining the gym (B13F). Furthermore, he reported the Dr. Gradel that he gets along with his mother, he has a few friends and for the most part he got along with coworkers and supervisors (B4F/3).

With regard to concentrating, persisting or maintaining pace, the claimant had a moderate limitation. The claimant testified that his PTSD disturbs his concentration and focus. However, treatment records note the claimant cognition was grossly intact (See B3F). Additionally, consultative examination Dr. Gradel noted the claimant performed serial 3's with 7/8 correct calculations, and he could count change (B4F). As well, the claimant testified he can manage his own finances and the record notes he reported reading, working on rubric cube, and considering rejoining the gym (B13F/3).

As for adapting or managing oneself, the claimant had experienced a moderate limitation. The claimant testified that he lives alone, but he has difficulty in his relationships, and he blows things out of proportion. As well, he reports always checking doors and windows due to his hypervigilance. Nonetheless, the record documents the claimant's judgment was intact, he was oriented times three and his thought content and thought process was normal (See B3F, B4F, B15F and B16F). Moreover, the record shows the claimant can drive, run errands, and manage his own finances (B4F). As well, the claimant reported that he can shop alone, he can prepare basic food, handle his own personal care and he can do chores (B4F/3).

Admin. R. 18-19 (ECF No. 13-3). The ALJ concluded that "[b]ecause the claimant's

mental impairments did not cause at least two 'marked' limitations or one

'extreme' limitation, the 'paragraph B' criteria were not satisfied." Admin. R. 19 (ECF No. 13-3).

Immediately after his Paragraph B discussion, the ALJ concluded that "the evidence fails to establish the presence of 'paragraph C' criteria." Admin. R. 19 (ECF No. 13-3).

Other than NP Duroseau's opinion, Plaintiff fails to cite to additional objective medical evidence demonstrating that his condition satisfies all the requirements of Listing 12.15, as of his date last insured. And, to the extent Plaintiff is arguing that the ALJ erred in failing to find marked or extreme limitations in his Paragraph B findings or erred in failing to find the Paragraph C criteria satisfied because he failed to properly consider NP Duroseau's opinion, *see* Pl.'s Br. 19-20, the Court disagrees. As explained above, the ALJ explicitly addressed the supportability and consistency factors in assessing NP Duroseau's opinion and finding it "unpersuasive." *See supra* Sec. B. Moreover, the ALJ pointed to other record evidence that contradicted NP Duroseau's opinion. "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," and the Court "may not reweigh the evidence or substitute [its] judgment for that of the Commissioner." *Pulley v. Comm'r*, 2022 WL 1694436, at *2 (N.D. Tex. May 13, 2022), *adopted by* 2022 WL 1689445 (N.D. Tex. May 26, 2022) (O'Connor, J.). Here, NP Duroseau's opinion contained extreme limitations the ALJ found unpersuasive. Because the ALJ clearly explained why, the Court may not second guess her. *Johnson v. Kijakazi*, 2022 WL 2193412, at *3 (S.D. Tex. June 17, 2022)

("The Commissioner has resolved the conflict. It is not my role to reweigh or second-guess that administrative decision.").

Overall, the ALJ properly evaluated Plaintiff's PTSD under Listing 12.15 and substantial evidence supported the ALJ's determination that Plaintiff's impairment did not meet all the criteria of the Listing. Accordingly, remand is not warranted on this basis.

### D. The ALJ's Evaluation of Plaintiff's Subjective Symptoms

Plaintiff contends that the ALJ did not "give proper weight to [his] testimony regarding the intensity and persistence of his symptoms of PTSD and depression." Pl.'s Br. 8. In response, the Commissioner argues that "because substantial evidence and relevant legal standards support the ALJ's subjective symptom evaluation, this Court should affirm the ALJ's decision." Def.'s Resp. 15.

Under the Social Security Regulations, the ALJ is required to follow a two-step process for evaluating a claimant's subjective complaints. *See* 20 C.F.R. §§ 404.1429, 416.929; SSR 16-3p, 2017 WL 5180304, at *2-3 (S.S.A. Oct. 25, 2017).[6]

---

[6] Effective March 2017, the Social Security Administration issued SSR 16-3p, which eliminated the "use of the term 'credibility' from [its] sub-regulatory policy," clarifying "that subjective symptom evaluation is not an examination of an individual's character." *See* 2017 WL 5180304. It instructs ALJs to determine "the extent to which . . . symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the [claimant's] record" and shifts the focus from a more general analysis of a claimant's truthfulness to an objective comparison of a claimant's statements to the evidence of record. *See Bell v. Kijakazi*, 2023 WL 5836826, at *12 n.11 (N.D. Tex. July 14, 2023) (Ramirez, J.), *adopted by* 2023 WL 5835972 (N.D. Tex. Sept. 8, 2023) (citation omitted). While SSR 16-3p explicitly supersedes SSR 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996),

First, the ALJ must consider whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *3-4. Once such an impairment is shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms to determine the extent to which they limit the individual's ability to do basic work activities. *See id.* at *4-5. The ALJ is to consider the entire record, including medical signs and laboratory findings, and statements by the claimant and his treating or examining sources concerning the alleged symptoms and their effect. *See id.* at *5-7. The ALJ must also consider a non-exclusive list of seven relevant factors in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual uses or has used to relieve pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

---

"it is evident that the change brought about by SSR 16-3p was mostly semantic." *Id.* at *12 (citation omitted).

> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *7-8; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Although the ALJ must give specific reasons for making this determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in [the] outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Bell v. Kijakazi*, 2023 WL 5836826, at *12 (N.D. Tex. July 14, 2023) (Ramirez, J.), *adopted by* 2023 WL 5835972 (N.D. Tex. Sept. 8, 2023) (citation omitted). Moreover, the Fifth Circuit has explicitly rejected the requirement that an ALJ "follow formalistic rules" when assessing a claimant's subjective complaints. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). The ALJ's evaluation of the claimant's subjective complaints is entitled to judicial deference. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). The ALJ is in the best position to assess a claimant's subjective complaints because she "enjoys the benefit of perceiving first-hand the claimant at the hearing." *Falco*, 27 F.3d at 164 n.18; *see also Biestek*, 139 S. Ct. at 1157 (noting the presiding ALJ, "who has seen the hearing up close," deserves deference).

Here, the ALJ noted the proper standard and two-step analysis for evaluating subjective complaints and symptoms based on a consideration of the entire case record. *See* Admin. R. 20 (ECF No. 13-3). She then considered Plaintiff's hearing testimony including that he lives alone, receives VA benefits because of his

PTSD issues, has PTSD that causes him to lack concentration, has insomnia, is hypervigilant, and is prone to overreacting. Admin. R. 20-21 (ECF No. 13-3). The ALJ also considered his testimony that he has mood-related outbursts secondary to his PTSD, which limits his ability to appropriately and regularly interact with others, and his testimony that he does not think he should be in a work environment because he has problems with his anger, and he would be dangerous. Admin. R. 21 (ECF No. 13-3). She noted that mental health treatment records reflect that the claimant has been treated with behavioral therapy and some medications, including fluoxetine, naltrexone, and hydroxyzine. Admin. R. 21 (ECF No. 13-3). She also noted that "[m]ental status exams have generally reflected some degree of abnormalities consistent with PTSD, as well as dysthymic/depressive and alcohol dependence disorder, including an okay mood." Admin. R. 21 (ECF No. 13-3).

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." Admin. R. 21 (ECF No. 13-3).

The ALJ found that Plaintiff's allegations of inability to work at any job due to the intensity, persistence, and limiting effects of his symptoms were inconsistent with the objective medical evidence. Admin. R. 20-22. *See* 20 C.F.R. §

404.1529(c)(2) (describing objective medical evidence as a "useful indicator" in the subjective symptom evaluation).

The ALJ noted that Plaintiff's "behavioral therapy records suggest that his PTSD is generally stable, outside of mild periods of heightened symptoms secondary to relational and life stressors, such as negative interactions with his girlfriend, and his involvement in the legal system." Admin R. 21 (ECF No. 13-3) (citing Exh. B3F/13). The ALJ noted that despite Plaintiff's testimony about disabling anger-related outbursts affecting his ability to interact with others, mental status examinations and behavioral therapy records have shown calm, pleasant, and cooperative behavior. Admin. R. 21-22 (ECF No. 13-3) (citing Exhs. B2F/6, 6, B3F/7, 13, 29, B15F/7, 9, 13, 16, 23).

The ALJ further noted that Plaintiff's allegations of complete disability and inability to work at any job due to the intensity, persistence, and limiting effects of his symptoms were inconsistent with his treatment history, which documented that Plaintiff's PTSD symptoms were managed and "stable" with medications and behavioral therapy. Admin. R. 21-22 (ECF No. 13-3) (citing Exh. B2F/6, B3F/13).

In addition to addressing the lack of consistency with the objective medical evidence, the ALJ considered whether Plaintiff's subjective statements were consistent with "other evidence" in the record, such as his daily activities. Admin. R. 18-19, 26, 60 (ECF No. 13-3). Plaintiff's self-reports and testimony reflect that his activities included driving, shopping alone, running his own errands, preparing basic food, maintaining personal hygiene, completing household chores (e.g.,

sweeping/mopping, washing dishes, doing laundry, and making his bed) and managing money, which the ALJ concluded were inconsistent with Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms. Admin. R. 18-19, 26, 60 (ECF No. 13-3) (citing Exhs. B4F, B4F/3).

Based on the ALJ's written decision and the record, the Court concludes that the ALJ's evaluation of Plaintiff's subjective symptoms is supported by specific reasons that, in turn, are supported by the record. Because the ALJ properly considered Plaintiff's symptoms under SSR 16-3p, remand is not warranted on this issue.

## Recommendation

For these reasons, the Magistrate Judge recommends that the District Court AFFIRM the Commissioner's decision.

**SO RECOMMENDED.**

April 5, 2024.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or

refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Svcs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).